IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ANTHONY BENJAMIN**,

      Petitioner,

v.

**BRANDON KELLY**,

      Respondent.

Case No. 6:19-cv-259-JE

**OPINION AND ORDER**

Megan E. McVicar, Hoevet Olson, pc, 1000 SW Broadway, Suite 1740, Portland, Oregon 97205. Of Attorneys for Petitioner.

Ellen F. Rosenblum, Attorney General, and James M. Aaron, Assistant Attorney General, Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Respondent.

**Michael H. Simon, District Judge.**

      On April 1, 2021, this Court adopted the Findings and Recommendation of U.S. Magistrate Judge John Jelderks denying Petitioner Anthony Benjamin's Second Amended Petition for Writ of Habeas Corpus (Petition) as procedurally barred and granting a certificate of appealability. On April 29, 2022, the Ninth Circuit Court of Appeals issued a Memorandum opinion, which was effective on May 23, 2022, upon the issuance of the mandate, reversing this Court's Order and remanding for further proceedings. The Court then referred this matter to Judge Jelderks for consideration on the merits of the amended petition.

      Judge Jelderks issued Findings and Recommendation (F&R) on September 2, 2022. Judge Jelderks recommended that this Court grant Petitioner's Petition on two grounds. Both

PAGE 1 – OPINION AND ORDER

parties filed objections. Petitioner objects that this Court should grant the amended petition on three additional grounds. Respondent objects to factual inferences by Judge Jelderks and to the recommendation that this Court grant the Petition on the two grounds recommended by Judge Jelderks. After a de novo review, for the reasons stated below, the Court adopts the F&R in part, granting the Petition on the two grounds as found by Judge Jelderks, plus one other ground asserted in Petitioner's Petition.

## STANDARDS

Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although absent objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

A detailed background discussion is in the F&R and the Court adopts that section of the F&R. The Court provides a factual summary. Petitioner and two others, Jaron Weeks, and Weeks' stepmother, Lynette Harris, took part in a violent encounter with Robert Williams. Williams was a big man, and he hit Petitioner and knocked him down, possibly briefly knocking him out. Williams then pinned down Weeks. Harris started hitting Williams to get him off Weeks, to no avail. According to Weeks and Harris, Petitioner then returned to the fight and stabbed Williams in the cheek, allowing Weeks to escape from under Williams and the three of them, Harris, Weeks, and Petitioner, left the scene. According to Petitioner, Harris stabbed Williams. Williams died two weeks later in the hospital. Harris spontaneously confessed to stabbing Williams to two people the day of the incident and to a third person a few weeks later, when the police were searching for her.

At Petitioner's trial, the trial judge granted the prosecution's motion to limit the testimony of the three people who heard Harris's confessions for use only as impeachment evidence and not as substantive evidence that Harris committed the crime. Petitioner's trial counsel agreed and did not object to this limited use of the evidence. During deliberations, the jury sent a question: "Referring to Page 10 of instructions and definition of Manslaughter, does recklessly cause specifically mean inflicted fatal wound or could it mean part of contributing event, i.e., part of a group action?" The trial court responded: "You should rely on your own reading of the instructions provided. Remember that you should—that you should view the instructions as a whole. The other instructions may provide context for your question." Trial counsel did not object to this response to the jury or propose a different response.

Defense counsel withdrew their request for a lesser-included instruction of Manslaughter in the Second Degree shortly before the case went to the jury. The jury ultimately found

PAGE 3 – OPINION AND ORDER

Petitioner guilty of the lesser included offense of Manslaughter in the First Degree as to Williams' death, two counts of Tampering with a Witness, and three counts of Identity Theft. The jury acquitted Petitioner of Murder and the remaining charges against him. He received consecutive sentences totaling 272 months in prison.

## DISCUSSION

### A. Petitioner's Objections

#### 1. Ground 1(B)—Justification Defense

Petitioner first objects to Judge Jelderks' failure to grant the Petition on Ground 1(B), for failing to request a justification defense. Petitioner argues that the F&R's findings suggest that Petitioner's counsel's failure to pursue such a defense and request an instruction on this defense was constitutionally ineffective assistance of counsel. In analyzing why the Petition should be granted on the ground of failing to request a jury instruction on Manslaughter in the Second Degree, the F&R describes that the evidence at trial established that:

> (1) Williams was largely responsible for instigating the violent confrontation with Benjamin and Weeks; (2) Williams initially knocked Benjamin flat on his back and, possibly, knocked him out; (3) Williams had Weeks pinned down on the ground and would not let him up; and (4) someone stabbed Williams once or, at most, twice, with a knife no larger than a dollar bill in a matter of seconds.

F&R at 21. Judge Jelderks also found that not identifying an alternate perpetrator (because trial counsel agreed to limiting the evidence of Harris's confessions to impeachment only), not requesting a Manslaughter II instruction, and "not asking the judge for a jury instruction on the defense of another where Williams, after knocking Petitioner flat on his back, had Weeks pinned to the ground and refused to let him up," left Petitioner "in an unenviable position." *Id.*

The Court does not find trial counsel's failure to request a justification defense to be constitutionally deficient. Oregon law allows a person to use only the "degree of force which the

PAGE 4 – OPINION AND ORDER

person reasonably believes to be necessary for the purpose" of defending himself or a third person from the use of unlawful physical force. Or. Rev. Stat. § 161.209. Deadly force may be used only, as relevant here, if the defendant reasonably believes that the other person is:

> (1) Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or
>
> * * *
>
> (3) Using or about to use unlawful deadly physical force against a person.

Or. Rev. Stat. § 161.219.

Although Williams was using force against Weeks and Petitioner, hitting Petitioner and pinning Weeks to the ground, there is no evidence that Williams was using *deadly* force or was committing a *felonious* assault.[1] For example there is no evidence that Williams was choking Weeks while Williams had Weeks pinned to the ground or was otherwise engaging in life-threatening behavior. Stabbing Williams was the use of deadly force. Given the "highly deferential" standard for evaluating trial counsel's decision, and that "counsel is strongly presumed to have rendered adequate assistance," *Strickland v. Washington*, 466 U.S. 668, 689-90 (1984), trial counsel's decision not to pursue a justification defense without evidence that Williams was using deadly force or threatening to use deadly force did not rise to the level of ineffective assistance of counsel.

### 2. Ground 1(F)—Failure to Object to the Answer to the Jury Question

Petitioner objects that the F&R did not recommend granting the Petition on the ground that trial counsel was ineffective for failing to object to the trial court's answer to the jury's

---

[1] Assault in the Third Degree under Oregon Law, as relevant here, means: "Recklessly causes serious physical injury to another under circumstances manifesting extreme indifference to the value of human life." Or. Rev. Stat. § 163.165(1)(b).

question about what constitutes causation for manslaughter. Petitioner argues that the jury was obviously confused about whether it was required for Petitioner to be the person who stabbed Williams to convict him for manslaughter or whether his participation in the group melee that then resulted in Williams' stabbing, or "aiding and abetting" conduct, would suffice. The trial court's answer was not helpful and did not answer the question or recite Oregon's law on manslaughter and its required personal conduct.

Before Petitioner's trial, the Oregon Supreme Court had explained that examples of "legal causation in the manslaughter statute are ones in which a potential defendant, by his or her own conduct other than mere participation in the risky activity, caused a victim's death." *State v. Murray*, 343 Or. 48, 55-56 (2007). Thus, it was established under Oregon law that it had to be Petitioner's own conduct, and not participation in a group activity, that caused Williams' death, and that is the answer that should have been given to the jury.

The failure to give a clear answer was compounded by the direction given in response to the question to look at the other jury instructions for context. These other instructions included an instruction on accomplice witnesses, which included instructions on aiding and abetting another person in committing the crime against Williams. These descriptions of accomplice liability and aiding and abetting did not state that they did not apply to manslaughter. Although these instructions focused on whether Weeks or Harris were accomplices or aided and abetted Petitioner, if the jury decided that Harris was the person who stabbed Williams, then the jury could have looked at these instructions and determined that Petitioner was an accomplice or an aiders and abetter.

Respondent argues that trial counsel was not ineffective because in defining recklessly, the trial court instructed that it means that Petitioner "was aware of and consciously disregarded

PAGE 6 – OPINION AND ORDER

a substantial and unjustifiable risk that his actions would cause the death of Robert Raymond Williams." This argument is unavailing because the "actions" that "caused" the death could have been interpreted by the jury to be participating in the fight that led to the stabbing, and not the stabbing itself. This instruction provides no more clarity than does the manslaughter instruction when the jury was trying to figure out if manslaughter required Petitioner to personally stab Williams.

Respondent also argues that trial counsel was not ineffective because there could not have been any prejudice from any error. Respondent argues that the jury ultimately found that Petitioner did stab Williams. Respondent relies on post-conviction factfinding during the sentencing enhancement portion of the trial. During this portion of the trial, the jury was asked "whether during the commission of the crime of Manslaughter in the First Degree, did Anthony Lee Benjamin personally use a weapon . . . ?" ECF 18-1 at 757-58 (Tr. 2276-77).

The jury was not asked whether Petitioner used a "deadly" weapon. The jury was not asked whether during the stabbing Petitioner used a weapon. The jury instead was asked whether during the commission of the crime of manslaughter Petitioner used a weapon. During the trial, the prosecution repeatedly emphasized through multiple witnesses that Petitioner used a large umbrella to hit Williams. That is a weapon. The jury's question shows that the jury could have considered participation in the entire violent encounter (being part of the group activity) the commission of the crime of manslaughter. Use of the umbrella occurred during that group violent encounter and Petitioner used the umbrella. Thus, the jury could have found that Petitioner used a weapon (the umbrella) while participating in the commission of the crime of manslaughter (the group violent encounter that led to the stabbing) even if Petitioner did not personally stab Williams.

PAGE 7 – OPINION AND ORDER

The jury's answer to the question of whether Petitioner used a weapon does not foreclose there being prejudice as a result of trial counsel's failure to object to the response given to the jury's question on the causation required for manslaughter. Indeed, had the response to the jury question been different, there is a reasonable probability that the jury's answer to the factfinding question would have been different. But the jury likely would not have had to answer that question, because there is a reasonable probability the jury's answer to whether Petitioner committed Manslaughter in the First Degree would have been different. Trial counsel was ineffective for failing to object to the trial judge's response to the question. *See Bollenbach v. United States*, 326 U.S. 607, 612 (1946); *Jones v. Baldwin*, 163 Or App 507 (1999). PCR counsel was ineffective for failing to raise this issue, excusing the procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012). The Court grants the Petition on this ground.

### 3. Ground 1(G)—Merger

Petitioner argues that trial counsel was ineffective for failing to argue that the two witness tampering counts should merge. Petitioner cites new authority issued after Petitioner's brief in support of his Petition, *Kurtz v. Cain*, 315 Or. App. 518 (2021). *Kurtz* held that for a trial conducted in 2013 (like Petitioner's trial), the law was settled and obvious that for "multiple counts of tampering with a witness based on a single act, the guilty verdicts merge under ORS 161.067, even though the counts involve different ways of violating the statute." *Id.* at 521 (quoting *State v. Jenkins*, 280 Or. App. 691, 693 (2016)).

As Respondent points out, however, Petitioner's trial counsel raised ORS § 161.067 and a few cases applying it. Trial counsel discussed sole victim (meaning the witness tampered with) and sufficient pause, which are elements to consider under Oregon law in whether to merge the counts. The prosecution argued that Petitioner's convictions involved two separate witnesses, and even if they are considered to involve only one witness, they involved separate incidents.

PAGE 8 – OPINION AND ORDER

Although not clearly argued, the parties were discussing merger. The trial judge concluded that the tampering involved "two different witnesses" and was not the same criminal episode, and thus imposed consecutive sentences.

Under Oregon law, "[w]hen the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims." Or. Rev. Stat. § 161.067(2). The trial judge found both two or more victims and that it was not the same criminal episode, and so the counts were separately punishable. Thus, even if trial counsel's arguments for merger were constitutionally deficient, they did not cause the requisite prejudice under *Strickland*.

### B. Respondent's Objections

#### 1. Objection to Inferences from the Jury Question

Respondent objects to the inference drawn in the F&R from the jury's question. Respondent argues that the jury's question does not imply that the jury intended to determine whether Petitioner had to personally stab Williams to commit Manslaughter in the First Degree, or whether he could have been part of a group action that led to the stabbing. Respondent also objects to the F&R's statement that the answer given by the trial judge was not helpful. The Court rejects this argument. The question speaks for itself and is clear that the jury was struggling with that precise question—whether Petitioner had to personally stab Williams or be part of a group action that resulted in the stabbing. And the answer provided was a nonanswer.

Respondent primarily bases this objection on his conclusion that the jury determined that Petitioner did, in fact, stab Williams based on the post-conviction factfinding answer of "yes" to whether Petitioner used a weapon. As discussed above, however, that answer could have been based on the jury's misunderstanding that the entire group encounter constituted manslaughter (because of the nonanswer to the jury's question) and Petitioner's use of the umbrella.

PAGE 9 – OPINION AND ORDER

### 2. Ground 1(A)—Limiting Use of Confessions

Respondent objects to the F&R's recommendation that this Court grant the Petition on Ground 1(A), that trial counsel was ineffective for failing to object to the instruction limiting the use of the three spontaneous confessions by Harris. Respondent argues that because the confessions were admitted for impeachment purposes, there was no legal basis on which trial counsel could have objected, because there is no federal due process right to have the confessions admitted as substantive evidence. Respondent also argues that there was no prejudice in having the confessions limited to only impeachment purposes.

Respondent contends that there is no dispute that the evidence of Harris's confessions to third parties was hearsay and was admissible under Oregon law only for impeachment purposes. Petitioner, however, does dispute that under Oregon law the evidence was admissible only for impeachment purposes.

The Oregon Supreme Court addressed this issue in *State v. Cazares-Mendez*, 350 Or. 491 (2011). The Oregon Supreme Court held that the unavailability requirement of Rule 804(3)(c) of the Oregon Evidence Code, the exception for statements against penal interest, does not apply "where the unavailability requirement is used, as here, to exclude otherwise trustworthy evidence that, if believed, shows that a person other than defendant committed the crime, [because] that requirement is arbitrary and disproportionate to the purpose that the evidentiary rule is designed to serve." *Cazares-Mendez*, 350 Or. at 519. Evidence is considered trustworthy when "the declarant's statements are sufficiently corroborated." *Id.* at 520. As Judge Jelderks explained, the confessions here were sufficiently corroborated. Thus, under Oregon law at the time of trial, they were subject to a hearsay exception and were admissible as substantive evidence.

Respondent also argues that admission of the confessions as substantive evidence likely would not have made any difference and thus Petitioner cannot show any prejudice from any

PAGE 10 – OPINION AND ORDER

error by trial counsel. Respondent argues that because the confessions were admitted to impeach Harris, there is no harm to their exclusion for substantive purposes. But if the evidence had been admitted for substantive purposes, it also could have impeached Weeks, who testified that Petitioner stabbed Williams. It would have explained why his alleged bias, as Harris's stepson, mattered. Without substantive evidence that Harris stabbed Williams, there was no motive for Weeks to lie about Petitioner stabbing Williams. There are any number of ways the evidence could have been used substantively at trial.

Respondent also argues that it is not plausible that the jury convicted Petitioner of manslaughter while also believing that Harris lied on the stand and that she confessed to multiple people. Thus, argues Respondent, admission of the confessions as substantive evidence would not have made any difference. As discussed above, however, the jury may have believed that manslaughter could be a group event and essentially include aiding and abetting or accomplice liability and that if Harris stabbed Williams, Petitioner could be guilty of manslaughter through his participation in the group event. The Court adopts this portion of the F&R.

### 3. Ground 1(D)—Manslaughter in the Second Degree

Respondent objects to the F&R's recommendation that this Court grant the Petition on Ground 1(D), for trial counsel's failure to request a jury instruction on Manslaughter in the Second Degree. The state did not object to giving this instruction and the trial judge planned to give it, until Petitioner's trial counsel withdrew the request for this lesser-included offense shortly before the case went to the jury. Respondent argues that this was an acceptable trial strategy.

The Court agrees with Judge Jelderks that trial counsel's failure to request this instruction was below the standard of reasonableness and was prejudicial. Respondent's argument that trial counsel engaged in an "all or nothing" strategy is unavailing. Trial counsel argued that Petitioner

PAGE 11 – OPINION AND ORDER

committed manslaughter, and then left the jury with only one serious manslaughter count on which to convict. In terms of the "nothing" side of the equation, trial counsel did not argue an alternative perpetrator, Harris, because counsel allowed the confession evidence to only be used for impeachment purposes. Counsel did not argue a justification defense or request that instruction. So there was not much of a "nothing" to Respondent's contention that trial counsel argued an "all or nothing" strategy. As Judge Jelderks explains, trial counsel left Petitioner in an "unenviable" position in terms of substantive arguments, and then removed his best hope in terms of a lesser-included crime on which to be convicted, Manslaughter II. It was reasonably probable that the jury would have convicted Petitioner of Manslaughter II if given the chance and thus this error was prejudicial. The Court adopts this portion of the F&R.

## CONCLUSION

Pursuant to the Ninth Circuit's Memorandum issued on April 29, 2022 (ECF 66), effective May 23, 2022 (ECF 67), the Order and the Judgment of this Court, both dated April 1, 2021, (ECF 63 and 64) are VACATED. The Court ADOPTS IN PART the Findings and Recommendation (ECF 70). The Court GRANTS IN PART Petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF 39), on Grounds 1(A), (D), and (F). The Court DENIES the Petition on all remaining grounds. Within ninety days of the date of this Opinion and Order, the State shall recalculate Petitioner's sentence without the manslaughter conviction. If required under the resulting recalculation, the State must either release Petitioner or commence a retrial within the ninety-day period.

**IT IS SO ORDERED**.

DATED this 24th day of January, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge